UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

GREGORY RONALD COLEMAN,

                Petitioner,             Case No. 1:07-cv-465

v.                                     Honorable Paul L. Maloney

SHIRLEE A. HARRY,

                Respondent.

_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner is serving two concurrent terms of six to fifteen years, imposed by the Oakland County Circuit Court on February 28, 2005, after a pleading guilty to two counts of armed robbery, MICH. COMP. LAWS §750.529, as a second habitual offender, Mich. Comp. Laws §769.10. In his *pro se* petition, Petitioner raises five grounds for relief, as follows:

    I.        DEFENDANT IS ENTITLED TO SPECIFIC PERFORMANCE OF A COBBS AGREEMENT BECAUSE THE CIRCUIT JUDGE'S PEREMPTORY WITHDRAWAL OF THE AGREEMENT WAS VINDICTIVE, AN ABUSE OF DISCRETION, AND DENIED DEFENDANT DUE PROCESS OF LAW

    II.      DEFENDANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL (1) BY COUNSEL'S FAILURE TO OBJECT TO THE TRIAL COURT'S VINDICTIVE WITHDRAWAL OF A COBBS AGREEMENT AND (2) BY THE APPEARANCE OF SUBSTITUTE COUNSEL AT SENTENCING.

    III.    DEFENDANT WAS DENIED DUE PROCESS BECAUSE INACCURATE INFORMATION, I.E., FOUR MISDEMEANOR CONVICTIONS THAT NEVER OCCURRED, PLAYED A ROLE IN THE SENTENCING DECISION.

IV.    DEFENDANT IS ENTITLED TO AN EVIDENTIARY HEARING IN SUPPORT OF HIS POST-CONVICTION CLAIMS (1) THAT HE WAS DENIED DUE PROCESS BY A VINDICTIVE JUDGE AND (2) THAT HE WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL.

V.    DEFENDANT WAS DENIED DUE PROCESS AND A FAIR HEARING FOR HIS POST-CONVICTION MOTIONS BECAUSE THE DECISIONMAKER WAS THE VERY SAME JUDGE WHOSE CONDUCT WAS BEING FAIRLY CHALLENGED AS VINDICTIVE.

Respondent has filed an answer to the petition (docket #7) stating that the grounds should be denied because they have no merit. Upon review and applying the AEDPA standards, I find that Petitioner's stated grounds are without merit. Accordingly, I recommend that the petition be denied.

## Procedural History

### A.    Trial Court Proceedings

Petitioner was charged with two counts of armed robbery as a second-habitual offender. On February 25, 2005, a hearing was held in Oakland County Circuit Court at which Petitioner attempted to plead guilty. According to the transcript, Plaintiff and the judge had a conference off the record and then the judge indicated that she had agreed to a five-year *Cobbs*[1] agreement. (Pretrial Transcript (PT. Tr.) at 3, docket #12.) During his plea colloquy, Petitioner indicated that he was not satisfied with his attorney's advice. (*Id*. at 4.) After that statement, the judge told Petitioner to "forget it," set trial for the following Monday and indicated that that hearing would be considered the final pretrial hearing. (*Id*. 4-5.)

The following Monday, Petitioner decided to plead guilty.

MR. SABBOTTA: Jerome Sabbota on behalf of Mr. Coleman, your Honor. We're pleading guilty as charged.

[1] *People v. Cobbs*, 505 N.W.2d 208 (1993)

- 2 -

THE COURT: All right. Do you have a plea form?

MR. SABBOTTA: I have a plea form.

THE COURT: There's no Cobb. He understands that?

MR. SABBOTTA: I understand, but Friday was not the final pretrial.

THE COURT: There's no Cobb.

MR. SABBOTTA: All right. We understand.

THE COURT: I said that Friday to your client.

MR. SABBOTTA: There is no Cobb. He understands that.

THE COURT: Okay. Do you want to raise your right hand to be sworn, please?

(Plea Transcript (Plea Tr.) at 3, docket #13.)

Petitioner pleaded guilty to two counts of armed robbery and acknowledged his second habitual offender status. (Plea. Tr. at 4.) Petitioner also acknowledged that he faced life in prison with a minimum of one year and that there was no *Cobbs* agreement. He also stated that he understood that there was no plea agreement to reduce or dismiss any charge. Petitioner stated that he understood that if the court accepted his plea, he would not have a trial, he would give up the rights explained by the court and he would give up "any claims that the plea was a result of promises and threats that were not disclosed to the court and it was not your choice to plead." (Plea. Tr. at 6.)

THE COURT: Has anyone threatened you to get you to plead?

[PETITIONER]: No.

THE COURT: Is it your own choice to plead?

[PETITIONER]: Yes, it is.

- 3 -

(Plea Tr. at 7.) Petitioner then proceeded to recount the details of the crimes to which he was pleading guilty.

The Sentencing Hearing was held on March 11, 2005. Petitioner was represented by Mitchell Ribitwer and was sentenced to a term of incarceration of six to fifteen years.

### B. Direct Appeal

Petitioner sought leave to appeal to the Michigan Court of Appeals. His brief, which was filed through counsel, raised the same five issues as raised in this application for habeas corpus relief. (See Def.-Appellant Delayed Application for Leave to Appeal, docket #15.) The Michigan Court of Appeals denied his delayed application for lack of merit in the grounds presented. (*See* 7/28/06 Mich. Ct. App. Order, docket #15.)

Petitioner filed a *pro per* application for leave to appeal to the Michigan Supreme Court. Petitioner raised the same five claims raised before and rejected by the Michigan Court of Appeals. By order entered November 29, 2006, the Michigan Supreme Court denied his application for leave to appeal because it was not persuaded that the questions presented should be reviewed. (*See* Mich. Order, docket #16.)

### Standard of Review

This action is governed by the Antiterrorism and Effective Death Penalty Act, PUB. L. 104-132, 110 STAT. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant

to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Bailey*, 271 F.3d at 655; *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000). The inquiry is "limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time [the petitioner's] conviction became final." *Onifer v. Tyszkiewicz*, 255 F.3d 313, 318 (6th Cir. 2001).

A decision of the state court may only be overturned if (1) it applies a rule that contradicts the governing law set forth by the Supreme Court, (2) it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result; (3) it identifies the correct governing legal rule from the Supreme Court precedent but unreasonably applies it to the facts of the case; or (4) it either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend a principle to a context where it should apply. *Bailey*, 271 F.3d at 655 (citing *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694; *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411; *accord Bell*, 535 U.S. at 699. Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 410.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989). Applying the foregoing standards under the AEDPA, I find that Petitioner is not entitled to relief.

## Discussion

### I.      Guilty Plea: Ground 1

Petitioner's first ground concerns the circumstances of his guilty plea. Petitioner asserts that the trial court violated his Due Process rights by withdrawing a *Cobbs*[2] agreement and

---

[2]The *Cobbs* agreement is particular to Michigan law governing plea agreements. The Michigan State Supreme Court first established that sentence bargaining is acceptable in Michigan criminal practice in *People v. Killebrew*, 330 N.W.2d 834 (1982). The court held that the trial judge "may not become involved in the negotiation of the bargain." 330 N.W.2d at 836. The judge's role is limited to consideration of the bargain between the defendant and the prosecutor. *Id.* Even so, if the court chooses not to follow the prosecutor's sentence recommendation, the defendant "must be given the opportunity to withdraw his guilty plea." As a consequence, all plea recommendations negotiated between the defendant and the prosecutor are "binding" in the sense that the defendant must be given the opportunity to withdraw his guilty plea and proceed to trial if the court does not accept the prosecutor's recommendation.

In *Cobbs*, the state Supreme Court expanded the legitimate role of the trial judge. Under *Cobbs*, at the request of a party, the judge "may state on the record the length of sentence that, on the basis of the information then available to the judge, appears to be appropriate for the charged offense." 505 N.W.2d at 212. This preliminary evaluation does

requests specific performance of that agreement. At a hearing on February 25, 2005, the trial court judge agreed to a five-year *Cobbs* agreement. However, Petitioner did not plead guilty on February 25, 2005, because during his colloquy he indicated that was not satisfied with his counsel's representation.

> MR. SABBOTA: Jerome Sabbotta on behalf of the defendant. Can we approach the bench for a Cobb, Judge?
>
> THE COURT: Yes.
>
> (Bench conference held off the record.)
>
> THE COURT: I've agreed to a five year Cobb. Raise you right hand to be sworn, pleas.
>
> *        *        *
>
> THE COURT: Your name and age?
>
> THE DEFENDANT: Gregory Coleman, 45.
>
> THE COURT: Can you read, write, and understand the English language?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Can you hear and understand me?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Could you hear and understand your attorney?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Are you satisfied with the advice of your attorney?

---

not, however, bind the judge at the time of sentencing. After reviewing the presentence report, the judge may adhere to the initial assessment or not. If the sentencing judge refuses to impose sentence in accordance with the initial assessment, defendant must be given an opportunity to withdraw the plea. In 2005, the Michigan court rules were amended to codify the requirements of *Killebrew and Cobbs*. *See* Mich. Ct. R. 6.310(B)(2). In this case, Petitioner asserts that he is entitled to specific performance of a five-year *Cobbs* agreement.

THE DEFENDANT: No.

MR. SABBOTA: You're not satisfied with my advice?

THE COURT: Well, then forget it. Go to trial.

MR. SABBOTA: Do you want to go to trial?

THE COURT: Let him go to trial on Monday.

MR. SABBOTA: Monday?

THE COURT: Yes.

MR. SABBOTA: All right.

THE COURT: We have an empty courtroom. I'll have no Cobb discussion now. You face life in prison.

MR. SABBOTA: Thank you.

*      *      *

MR. PIETROFESA [Prosecutor]: Judge just for note, there was never a final pretrial, and there's no witness - -

THE COURT: Today's the final pretrial.  He's not satisfied with his attorney's advice.  He wants a trial.  We're going to trial Monday.

(PT. Tr. at 3-4.)  Therefore, Petitioner did not plead guilty on February 25, 2008.  He, however, did

plead guilty the following Monday on February 28, 2008:

THE COURT: All right. Do you have a plea form?

MR. SABBOTA: I have a plea form.

THE COURT: There's no Cobb. He understands that?

MR. SABBOTA: I understand, but Friday was not the final pretrial.

THE COURT: There's no Cobb.

MR. SABBOTA: All right. We understand.

- 8 -

THE COURT: I said that Friday to your client.

MR. SABBOTA: There is no Cobb. He understands that.

THE COURT: Okay. Do you want to raise your right hand to be sworn, please?

THE CLERK: Do you solemnly swear or affirm the testimony you are about to give will be the truth and nothing but the truth?

THE DEFENDANT: Yes, I do.

THE COURT: Your name and age?

THE DEFENDANT: Gregory Coleman, age 45.

THE COURT: Can you read, write and understand the English language?

THE DEFENDANT: Yes, I can.

THE COURT: Can you hear and understand me?

THE DEFENDANT: Yes, I do.

THE COURT: Could you hear and understand your attorney?

THE DEFENDANT: Yes, I did.

THE COURT: Are you satisfied with the advice of your attorney?

THE DEFENDANT: Yes.

THE COURT: Do you understand that you are pleading guilty to two counts of armed robbery and acknowledging habitual second status?

THE DEFENDANT: Yes, I do.

THE COURT: And the most time you face is life in prison, the minimum is one year, understood?

THE DEFENDANT: Yes.

THE COURT: And there is no Cobb agreement pertaining to sentencing, understood?

THE DEFENDANT: Yes, I do.

THE COURT: And there is no plea agreement to reduce or dismiss any charge, understood?

THE DEFENDANT: Yes.

\* \* \*

THE COURT: Do you understand that if I accept your plea, you will not have a trial of any kind, you'll be giving up all the rights I told you about, you'll be giving up any claim that the plea was a result of promises and threats that were not disclosed to the Court and it was not your choice to plead?

THE DEFENDANT: Yes, I do.

\* \* \*

THE COURT: Has anyone threatened you to get you to plead?

THE DEFENDANT: No.

THE COURT: Is it your own choice to plead?

THE DEFENDANT: Yes, it is.

(Plea Tr. 1-7, docket #13.)

It has long been the case that a valid guilty plea bars habeas review of most non-jurisdictional claims alleging antecedent violations of constitutional rights. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Among claims not barred are those that challenge "the very power of the State to bring the defendant into court to answer the charge against him," *Blackledge v. Perry*, 417 U.S. 21, 30 (1974), and those that challenge the validity of the guilty plea itself. *See Hill*, 474 U.S. at 58; *Haring v. Prosise*, 462 U.S. 306, 320 (1983); *Tollett*, 411 U.S. at 267. A plea not voluntarily and intelligently made has been obtained in violation of due process and is void. *See McCarthy v. United States*, 394 U.S. 459, 466 (1969). Petitioner's claim does not challenge the

power of the state to bring him into court. Thus, the only means available for challenging his conviction is to claim that his plea is invalid, i.e., it was not knowingly and voluntarily entered into. *See Mabry v. Johnson*, 467 U.S. 504, 508 (1984) ("It is well-settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.").

The test for determining a guilty plea's validity is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). Courts assessing whether a defendant's plea is valid look to "all of the relevant circumstances surrounding it," *Brady v. United States*, 397 U.S. 742, 749 (1970), and may consider such factors as whether there is evidence of factual guilt. While courts may consider whether a factual basis for a guilty plea exists in their assessments of its validity, it has generally been held that the Constitution does not require that they ensure such a basis exists. *See Alford*, 400 U.S. at 31 ("Strong evidence of guilt may suffice to sustain a conviction on an *Alford* plea, and may be essential under FED. R. CRIM. P. 11, but it is not necessary to comply with the Constitution."); *see also Matthew v. Johnson*, 201 F.3d 353, 365 (5th Cir. 2000); *Wallace v. Turner*, 695 F.2d 545, 548 (11th Cir. 1983); *Thundershield v. Solem*, 565 F.2d 1018 (8th Cir.1977); *Edwards v. Garrison*, 529 F.2d 1374, 1376 (4th Cir.1975); *Roddy v. Black*, 516 F.2d 1380, 1385 (6th Cir. 1975); *Freeman v. Page*, 443 F.2d 493, 497 (10th Cir. 1971).

In order to find a constitutionally valid guilty plea, several requirements must be met. The defendant pleading guilty must be competent, *see Brady*, 397 U.S. at 756, and must have notice of the nature of the charges against him, *see Henderson v. Morgan*, 426 U.S. 637, 645 n. 13 (1976);

*Smith v. O'Grady*, 312 U.S. 329, 334 (1941). The plea must be entered "voluntarily," i.e., not be the product of "actual or threatened physical harm, or ... mental coercion overbearing the will of the defendant" or of state- induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel. *Brady*, 397 U.S. at 750; *Machibroda v. United States*, 368 U.S. 487, 493 (1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void."). The defendant must also understand the consequences of his plea, including the nature of the constitutional protection he is waiving. *Henderson*, 426 U.S. at 645 n. 13; *Brady*, 397 U.S. at 755; *Machibroda*, 368 U.S. at 493 ("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.") (internal quotations and citation omitted). Finally, the defendant must have available the advice of competent counsel. *Tollett*, 411 U.S. at 267-68; *Brady*, 397 U.S. at 756; *McMann v. Richardson*, 397 U.S. 759, 771 & n.14 (1970). The advice of competent counsel exists as a safeguard to ensure that pleas are voluntarily and intelligently made. *Cf. Henderson*, 426 U.S. at 647 ("[I]t may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit."); *Brady*, 397 U.S. at 754 (suggesting that coercive actions on the part of the state could be dissipated by counsel).

In Petitioner's initial attempt to plead guilty, when there was a *Cobbs* agreement in place, he indicated that he was unsatisfied with counsel's advice. (*See* PT Tr. at 4.) Since Petitioner stated that did not have the advice of competent counsel, the judge had no choice but to reject his plea. As is evident from the transcripts, Petitioner was not forced to continue to plead guilty on

February 25, 2005. It is also clear that on February 28, 2008, the date set for trial, Petitioner made a knowing, voluntary and intelligently made plea of guilty before the state-court judge without a *Cobbs* agreement in place.

Even if Petitioner had been sentenced outside a *Cobbs* agreement, the only remedy under *Cobbs* is to be allowed to withdraw his plea. *See People v. Johnson*, No. 253692, 2006 WL 119306, *4 (Mich. App. Jan. 17, 2006) (a defendant is "entitled to withdraw his plea if a *Cobbs* evaluation is not, or cannot be upheld," but the defendant is not entitled to specific performance) (citing *Cobbs*, 505 N.W.2d at 212; *People v. Connor*, 531 N.W.2d 734 (Mich. App. 1995); *People v. Siebert*, 537 N.W.2d 891 (1995)). Moreover, the relief defendant requests, i.e., specific performance, is not available for an alleged violation of a preliminary evaluation made pursuant to *People v. Cobbs*, 505 NW2d 208 (1993). There is no authority holding that a defendant has a right to specific performance of the court's preliminary evaluation. *People v. Deshazer*, No. 272076, 2007 WL 2744618, *1 (Mich.App. Sept. 20, 2007). The *Cobbs* Court held that "[t]he judge's preliminary evaluation of the case does not bind the judge's sentencing discretion, since additional facts may emerge during later proceedings, in the presentence report, through the allocution afforded to the prosecutor and the victim, or from other sources." *Cobbs*, 505 N.W.2d at 212. Rather, "a defendant who pleads guilty or nolo contendere in reliance upon a judge's preliminary evaluation with regard to an appropriate sentence has an absolute right to withdraw the plea if the judge later determines that the sentence must exceed the preliminary evaluation." *Id.*

For all those reasons, the state court's adjudication of Petitioner's plea was not contrary to or an unreasonable application of clearly established federal law and does not amount to a denial of due process. Petitioner's first ground is meritless.

## II.    Inaccurate Information at Sentencing: Ground 3

Petitioner asserts in Ground 3 that the trial court considered inaccurate information at the time of sentencing. Petitioner argues that he had only four prior misdemeanor convictions, but the Presentence Report (PSR) indicated that he had eight prior misdemeanor convictions. (Pet. at 9, 23.) According to Petitioner, the PSR stated that four misdemeanor convictions arose from an incident on October 6, 1999, when only one misdemeanor conviction for operating under the influence of liquor actually resulted from that incident. (*Id*. at 23.) The PSR also stated that Petitioner had a conviction for driving while license suspended from an incident on January 16, 2004, a charge Petitioner contends was dismissed. (*Id.*)

To the extent Petitioner alleges that there was improper scoring of sentencing guidelines, those claims are state-law claims and typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief); *Cheatham v. Hosey*, No. 93-1319, 1993 WL 478854, at *2 (6th Cir. Nov. 19, 1993) (departure from sentencing guidelines is an issue of state law, and, thus, not cognizable in federal habeas review); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (the sentencing guidelines establish only rules of state law). There is no constitutional right to individualized sentencing. *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995). Moreover, a criminal defendant has "no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt*, 347 F. Supp. 2d 474,

485 (E.D. Mich. 2004); *accord Lovely v. Jackson*, 337 F. Supp. 2d 969, 977 (E.D. Mich. 2004); *Thomas v. Foltz*, 654 F. Supp. 105, 106-07 (E.D. Mich. 1987).

Although state law errors generally are not reviewable in a federal habeas proceeding, an alleged violation of state law "could, potentially, 'be sufficiently egregious to amount to a denial of equal protection or of due process of law guaranteed by the Fourteenth Amendment.'" *Koras v. Robinson,* 123 F. App'x 207, 213 (6th Cir. Feb. 15, 2005) (citing *Bowling v. Parker*, 344 F.3d 487, 521 (6th Cir. 2003)). *See also Doyle*, 347 F. Supp. 2d at 485 (a habeas court "will not set aside, on allegations of unfairness or an abuse of discretion, terms of a sentence that is within state statutory limits unless the sentence is so disproportionate to the crime as to be completely arbitrary and shocking.") (citation omitted). A sentence may violate due process if it is based upon material "misinformation of constitutional magnitude." *Koras,* 123 F. App'x at 213 (quoting *Roberts v. United States,* 445 U.S. 552, 556 (1980)); *see also United States v. Tucker,* 404 U.S. 443, 447 (1972); *Townsend v. Burke,* 334 U.S. 736, 741 (1948). To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *Tucker*, 404 U.S. at 447; *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984); *Koras,* 123 F. App'x at 213 (quoting *United States v. Stevens,* 851 F.2d 140, 143 (6th Cir. 1988)). A sentencing court demonstrates actual reliance on misinformation when the court gives "explicit attention" to it, "found[s]" its sentence "at least in part" on it, or gives "specific consideration" to the information before imposing sentence. *Tucker*, 404 U.S. at 444, 447.

Petitioner has shown that the PSR contained inaccurate information at the time of sentencing. This information was corrected by the sentencing court after Petitioner made a post-

conviction motion for correction of the PSR. (Oakland Cty. Cir. Ct. Order, May 24, 2006, docket #16.) However, Petitioner cannot establish that the court relied on the false information in imposing his sentence. When issuing Petitioner's sentence, after allowing counsel and Petitioner to make a statement, the court stated:

> THE COURT: Okay. The following is the sentence of this Court. Six to 15 years, credit for the 65 days. Two fifty-four in restitution, 60 dollars to the Crime Victims Fee, 120 State costs.
>
> The sentence is within the guidelines. I'm imposing the sentence for the reasons stated within the guidelines.
>
> Good luck to you, Mr. Coleman.

(Sen. Tr. at 4, docket #14.) The court did not give explicit attention to or specific consideration of the inaccurate information. In fact, the sentencing court expressly relied upon on the sentencing guidelines to determine Petitioner's sentence. By Petitioner's own admission, the errors in the presentence report "did not result in a change in the guideline range." (Pet. at 23.) Therefore, even if the court relied upon it in determining the sentencing guideline range, a correction of the PSR would not have effected the guideline range or, ultimately, Petitioner's sentence. *See Buhl v. Metrish,* No. 07-13377, 2007 WL 4357729, *4 (E.D.Mich. Dec.11, 2007) (denying habeas relief on inaccurate information claim where the petitioner acknowledged that his current sentence would still fall within the proposed corrected guideline range) (cited by *Thornton v. White,* No. 07-14035-BC, 2009 WL 4506441, *5 (E.D.Mich. Nov. 30, 2009)). Accordingly, the trial court's sentence of Petitioner does not amount to a violation of due process and Petitioner is not entitled to habeas relief.

### III.    Ineffective Assistance of Counsel: Ground 2

Petitioner makes a variety of claims of ineffective assistance of counsel. In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691. A claim of ineffective assistance of counsel presents a mixed question of law and fact. Accordingly, the Court must apply the "unreasonable application" prong of § 2254(d)(1). *See Barnes v. Elo*, 339 F.3d 496, 501 (6th Cir. 2003).

In his first claim of ineffective assistance, Petitioner asserts that counsel was ineffective for failing to object to the judge's withdrawal of the *Cobbs* agreement. Petitioner has provided no basis upon which counsel could have made such a motion, but simply argues that

counsel failed to protect his interests "by thanking the trial judge for rejecting a COBBS agreement where there was simply no basis for doing so." (Pet. at 18.) As discussed above, because Petitioner expressed dissatisfaction with his counsel's advice at the time there was a *Cobbs* agreement in place, the trial court could not have accepted Petitioner's guilty plea. Therefore, objecting to the court's stopping the guilty plea and setting a date for trial would have been meritless and counsel's failure to make a frivolous or meritless motion does not constitute ineffective assistance of counsel. *See Chegwidden v. Kapture*, 92 Fed. Appx. 309, 311 (6th Cir. 2004); *A.M. v. Butler*, 360 F.3d 787, 795 (7th Cir. 2004); *James v. Borg*, 24 F.3d 20, 27 (9th Cir. 1994); *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir.1990); *United States v. Wright*, 573 F.2d 681, 684 (1st Cir. 1978).

Second, Petitioner argues that his substitute counsel[3] at sentencing was ineffective for failing to ask for downward departure. However, Petitioner has offered no basis on which counsel could have requested such a departure. He therefore fails to demonstrate that counsel's failure to make the motion was either outside the range of reasonable professional assistance or that the failure to make such a motion was prejudicial.

Third, Petitioner argues that substitute counsel was ineffective for failing to inform the court that Petitioner's prior felony conviction was seventeen years-old. However, he does not allege that this information was not in the PSR for the judge's consideration or that the information had any impact on the sentence. He therefore fails to demonstrate any possible prejudice.

Fourth, Petitioner asserts that substitute counsel was ineffective for failing to argue that the two convictions to which Petitioner pleaded guilty should count as one. He claims that the

---

[3]At sentencing, Petitioner was represented by the law partner of his attorney.

sentencing guidelines were inflated because the two convictions arose from a single transaction. (Pet. at 21.) However, Petitioner fails to offer any basis for why those separate convictions should have been scored as one conviction or even that this information contained in the PSR was inaccurate. Petitioner has made no showing that the motion would have merit and counsel's failure to make a meritless motion does not constitute ineffective assistance of counsel. *See Chegwidden*, 92 Fed. Appx. at 311; *A.M.*, 360 F.3d at 795; *James*, 24 F.3d at 27; *Koch*, 907 F.2d at 527; *Wright*, 573 F.2d at 684.

In his fifth claim of ineffective assistance, Petitioner asserts that substitute counsel was ineffective for failing to remind the sentencing judge that she had previously agreed to a five-year *Cobbs* agreement. Such a motion also would have been frivolous. The plea transcript reflects that the judge remembered the prior *Cobbs* agreement. (Plea Tr. at 3-5.) The judge clearly indicated prior to the guilty plea and during the guilty plea that there was no longer a *Cobbs* agreement. Therefore, counsel was not ineffective for failing to remind the sentencing judge of an agreement she had expressly withdrawn.

Sixth, Petitioner claims that he received ineffective assistance because substitute counsel failed to object to inaccurate information in the PSR. As admitted by Petitioner and discussed previously in Section II, the inaccurate information contained in the PSR did not change the guideline range. Petitioner cannot meet the second prong of the *Strickland* standard because he cannot show that he was prejudiced by the failure to object.

In his seventh claim of ineffective assistance, Petitioner argues that the appearance of substitute counsel at the time of sentencing constituted a denial of counsel during a critical stage of the proceedings. The denial of counsel during a critical stage of the proceeding amounts to a per

se denial of the effective assistance of counsel. *See United States v. Cronic*, 466 U.S. 648 (1984).

In *Bell v. Cone*, 535 U.S. 685 (2002), the Supreme Court clarified the differences between claims governed by *Strickland* and claims governed by *Cronic*. If a claim is governed by *Strickland*, a defendant must typically demonstrate that specific errors made by trial counsel affected the ability of the defendant to receive a fair trial. If a claim is governed by *Cronic*, however, the defendant need not demonstrate any prejudice resulting from the lack of effective counsel. *Mitchell*, slip op. at 14 (citing *Bell*, 535 U.S. at 695). Three types of cases warrant the presumption of prejudice: (1) when the accused is denied the presence of counsel at a critical stage; (2) when counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing"; and (3) when counsel is placed in circumstances in which competent counsel very likely could not render assistance. *Mitchell*, slip op at 14 (quoting *Bell*, 535 U.S. at 695).

The *Bell* Court elaborated on what constitutes failure to subject the prosecution's case to meaningful adversarial testing under *Cronic:*

> When we spoke in *Cronic* of the possibility of presuming prejudice based on an attorney's failure to test the prosecutor's case, we indicated that the attorney's failure must be complete. We said "if counsel *entirely* fails to subject the prosecution's case to meaningful adversarial testing." *Cronic*, supra, at 659 (emphasis added). Here, respondent's argument is not that his counsel failed to oppose the prosecution throughout the sentencing proceeding as a whole, but that his counsel failed to do so at specific points. For purposes of distinguishing between the rule of *Strickland* and that of *Cronic*, this difference is not of degree but of kind.

> The aspects of counsel's performance challenged by respondent-the failure to adduce mitigating evidence and the waiver of closing argument - are plainly of the same ilk as other specific attorney errors we have held subject to *Strickland's* performance and prejudice components.

*Bell*, 535 U.S. at 697-98.

Petitioner had counsel throughout the proceedings against him. He argues that since he had substitute counsel, his attorney's law partner, at the time of sentencing that his due process rights were violated under *Cronic*. Petitioner claims that substitute counsel failed to subject the prosecution's case to "meaningful adversarial testing" because his counsel "failed to prepare for the hearing and offered virtually no mitigation." (Pet. at 20.) Petitioner's allegations are similar to those held to be correctly considered under *Strickland*. Petitioner alleges specific motions and arguments that he suggests counsel should have made, all of which this Court has already determined were all frivolous or meritless. Additionally, substitute counsel did present at least one mitigating factor on Petitioner's behalf by reminding the court that Petitioner has a "severe substance abuse problem." (Sen. Tr. at 3.) Petitioner simply cannot demonstrate the lack of representation that would implicate a violation of due process under *Cronic*.

Accordingly, his seventh claim of ineffective assistance is properly considered under *Strickland*. As discussed previously, the Court has found that the motions Petitioner claims substitute counsel should have made are frivolous or meritless. Petitioner cannot overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689. In addition, substitute counsel did offer the mitigating factor of Petitioner's substance abuse at the time of the robbery. (Sen. Tr. at 3.) Therefore, Petitioner cannot demonstrate that substitute counsel's representation violated his Sixth Amendment rights.

Petitioner cannot show that the performance of his counsel was either objectively unreasonable or prejudicial. Petitioner therefore cannot demonstrate that counsel's representation

violated Petitioner's Sixth Amendment rights or that the result was an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).

## IV.     Judicial Bias: Ground 5

Petitioner claims that he was denied due process because his post-convictions motions were heard by the sentencing judge at the same time he had motion to disqualify pending against her.  Due process demands that the judge be unbiased.  *In re Murchison*, 349 U.S. 133, 136 (1955) ("A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of *actual* bias in the trial of cases."  (emphasis added)).  A judge can and should be disqualified for bias, a likelihood of bias or even an appearance of bias.  *See Ungar v. Sarafite*, 376 U.S. 575, 588 (1964); *Railey v. Webb*, 540 F.3d 393 (6th Cir. 2008).  "But, it is also clear that judicial disqualification based on a likelihood or an appearance of bias is not always of constitutional significance; indeed, 'most matters relating to judicial disqualification d[o] not rise to a constitutional level.'"  *Railey*, 540 F.3d at 400 (citing *Fed. Trade Comm'n v. Cement Inst.*, 333 U.S. 683, 702 (1948); *see also Tumey v. Ohio*, 273 U.S. 510, 523 (1927) ("All questions of judicial qualification may not involve constitutional validity.").)

The Supreme Court has held in two types of cases that something less than actual bias violates constitutional due process: (1) cases that the judge "has a direct, personal, substantial pecuniary interest in reaching a [particular] conclusion," *Tumey*, 273 U.S. at 523 (subsequently expanded to include even indirect pecuniary interest); and (2) certain contempt cases, for instance, those in which the "judge becomes personally embroiled with the contemnor," *Murchison*, 349 U.S. at 141 (subsequently clarified to involve cases in which the judge suffers a severe personal insult or attack from the contemnor).  "The Court has also acknowledged four types of cases that, although

they present prudent grounds for disqualification as a matter of common sense, ethics, or 'legislative discretion,' generally do not rise to a constitutional level - 'matters of [1] kinship, [2] personal bias, [3] state policy, [and][4] remoteness of interest.'" *Railey*, 540 F.3d at 400 (quoting *Tumey*, 273 U.S. 523); *accord Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 820 (1986).

On March 10, 2006, Petitioner filed three post-conviction motions: a motion to disqualify the sentencing judge, a motion to correct inaccurate information in the PSR, and a motion for an evidentiary hearing. On March 22, 2006, the judge denied Petitioner's motion to disqualify her. (Oakland Cty. Cir. Ct. Order, docket #16.) Petitioner appealed to the chief judge, who denied Petitioner's motion on May 4, 2006. (Oakland Cty. Cir. Ct. May 4, 2006, docket #16.) The chief judge determined that Petitioner's motion was untimely, but also ruled on the merits:

> Pursuant to MICH. CT. RULE 2.003(B)(1), a judge may be disqualified on a showing of actual personal bias or prejudice. However, the party claiming bias must overcome a heavy presumption of judicial impartiality. See <u>Cain v Dep't of Corrections</u>, 451 Mich 470 (1996) and <u>First Michigan Bank v Bailey</u>, 232 Mich App 711 (1998). In addition, disqualification is warranted only when the bias or prejudice is both personal and extrajudicial.

> Finally, the court must display a deep-seated favoritism or antagonism that would make fair judgment impossible.

> After considering the arguments and the record in this case, the Court finds the [Petitioner] has failed to present circumstances that would cast doubt on Judge Tyner's impartiality. Even if the record revealed [the sentencing judge] was angry with the [Petitioner], which it does not, there has been no showing of prejudice or bias.

> First, a Judge is not obligated to engage in preliminary sentencing discussions prior to accepting a plea. Second, the record reveals the [Petitioner] was sentenced within the guidelines, as recommended by the Probation Department.

> Based on these circumstances, the Court finds the [Petitioner] has not overcome the heavy presumption of judicial impartiality to warrant disqualification of [the sentencing judge].

(Oakland Cty. Cir. Ct, May 4, 2006 Order, docket #16.)  On May 24, 2006, the sentencing judge issued orders denying Petitioner's motions for an evidentiary hearing and re-sentencing and granting Petitioner's motion to correct the presentence report.  (Oakland Cty. Cir. Ct. Orders, docket #16.)

The circumstances of this case do not support a finding that there was a violation of Petitioner's constitutional due process rights. As an initial matter, the judge's refusal to accept Petitioner's guilty plea after he indicated that he was not satisfied with his counsel, was proper and does not indicate that she was biased against Petitioner.  Additionally, Petitioner cannot support his contention that he was denied due process because his post-conviction motions were ruled upon by the same judge whose impartially he was challenging.  Although the sentencing judge initially ruled upon his motion to disqualify her, he appealed that ruling to the chief judge who considered the merits.  The chief judge ruled that the sentencing judge should not be disqualified.  The sentencing judge issued orders on Petitioner's remaining motions on May 24, 2006, after the chief judge's independent determination of Petitioner's motion to disqualify.

Petitioner makes no allegation that the sentencing judge had a direct, personal, substantial or pecuniary interest in reaching a particular conclusion.  Additionally, the transcripts of the plea, pretrial, and sentencing hearings do not indicated that the sentencing judge became personally embroiled with Petitioner.  Therefore, the state court's findings that the sentencing judge should not be disqualified were not objectively unreasonable and did not result in a decision that was contrary to clearly established federal law as determined by the Supreme Court.  28 U.S.C. § 2254(d)(1).

## V.    Evidentiary Hearing: Ground 4

In his fourth ground, Petitioner alleges that he is entitled to an evidentiary hearing in support of his claim that he was denied due process because of the judge's judicial bias and because he was denied the effective assistance of counsel. Petitioner claims that his own testimony at an evidentiary hearing would establish that there was no reasonable basis for the trial court's refusing to sentence him under the five-year *Cobbs* agreement. (Pet. at 10.) Regarding his ineffective assistance of counsel, Petitioner claims that the testimony of a defense attorney, Charles McSwigan, and Petitioner's own testimony would establish counsel's incompetence and that the choices of Petitioner's counsel were not strategically made. (Pet. at 10, 25-6.)

"Under AEDPA, evidentiary hearings are not mandatory." *Vroman v. Brigano*, 346 F.3d 598, 606 (6th Cir. 2003). The decision whether to order an evidentiary hearing to settle disputed issues of material fact is discretionary with the Court. *See* Rule 8(a), RULES GOVERNING § 2254 CASES (directing judge to make determination of whether evidentiary hearing is required); *Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir. 2001). "In fact, in determining whether to grant an evidentiary hearing to a habeas corpus petitioner, the district court must decide whether such a hearing would enable the petitioner to prove allegations that, if true, would entitle the applicant to federal habeas relief." *Johnson v. Mitchell*, 585 F.3d 923, 934 (6th Cir. 2009); *see also Hartman v. Bagley*, 492 F.3d 347, 361 (6th Cir. 2007) (citing *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007)). "'[B]ald assertions and conclusory allegations do not provide sufficient ground to warrant requiring the state to respond to discovery or to require an evidentiary hearing." *Stanford*, 266 F.3d at 459 (quoting *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 301 (3d Cir. 1991)); *see also Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003).

The question of whether a reasonable basis existed for the trial court to withdraw the offer of a *Cobbs* agreement was one of law based on the evidentiary record. No further evidence was relevant to the claim. Petitioner therefore is not entitled to an evidentiary hearing. Moreover, Petitioner makes only bald assertions and conclusory allegations that testimony at an evidentiary hearing would establish that counsel was incompetent and that counsel's choices were not strategically made. (Pet at. 10, 25-26.) He makes no specific factual allegations as to what testimony could undermine the presumption that counsel's performance was reasonable. *Strickland*, 446 U.S. at 689. Therefore, Petitioner has not alleged facts that, if proven at an evidentiary hearing, would entitle Petitioner to federal habeas relief. Petitioner is not entitled to an evidentiary hearing.

### **Recommended Disposition**

For the foregoing reasons, I respectfully recommend that the habeas corpus petition be denied.

Date: February 26, 2010          /s/ Ellen S. Carmody_____
                                 ELLEN S. CARMODY
                                 United States Magistrate Judge

### **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).